Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Werman Salas P.C.
77 West Washington St., Suite 1402
Chicago, IL 60602
Telephone: (312) 419-1008
Fax: (312) 419-1025
Email: dwerman@flsalaw.com
msalas@flsalaw.com
sarendt@flsalaw.com
*Admitted Pro Hac Vice*

**Attorneys for Plaintiff Winston**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Mildred Winston, on behalf of herself and others similarly situated, known and unknown,**<br><br>    ***Plaintiff***,<br><br>**v.**<br><br>**Aetna Medicaid Administrators, LLC,**<br><br>    ***Defendant***. | Civil Action No. 2:19-cv-4703-JJT<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR STEP-ONE NOTICE PURSUANT TO FLSA** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR STEP-ONE NOTICE PURSUANT TO THE FAIR LABOR STANDARDS ACT**

1

## I.   **OVERVIEW**

Plaintiff asserts that Defendant Aetna Medicaid Administrators, LLC ("Aetna") engages in a common, widespread practice in the managed care industry: misclassifying utilization review and case management employees (collectively CMEs) as exempt from the overtime pay provisions of the Fair Labor Standards Act ("FLSA").[1] The only question the Court need now answer is whether Plaintiff has made the required "modest" showing that she was subjected to the same policies or practices as other potential opt-in plaintiffs that are alleged to violate the Fair Labor Standards Act. Because Plaintiff's evidentiary showing—13 sworn declarations and the job descriptions for the positions at issue—satisfies the modest showing that Plaintiff and other potential opt-in plaintiffs (1) performed the same or similar jobs; (2) worked one or more individual work weeks in excess of 40 hours; and (3) were subjected to the same compensation policy that paid them a salary with no overtime, the Court should grant Plaintiff's Motion. Plaintiff also asks the Court to approve her proposed form of Notice and Notice program, including the provision of Notice to persons who may have signed arbitration agreements.

## II.   **FACTUAL BACKGROUND**

### A.   THE PARTIES.

Aetna is in the business of providing managed care services to its health plan customers.[2] Aetna employs salaried employees under various job titles, categorized under its "behavioral health" and/or "nursing" job families, that include the following terms or variations of those terms: (1) Review

---

[1] *Clark v. Centene Co. of Texas, L.P.,* 656 F. App'x 688, 689 (5th Cir. 2016) (affirming summary judgment that nurse case managers did not fall within the administrative or professional exemption requirements of the FLSA where their job duties consisted of utilization review, making referrals to supervisors, providing patient and provider education, and entering data related to assessments, authorizations, and reviews into defendant's computer systems).

[2] www.aetna.com/dse/cms/codeAssets/html/static/aetna_medicaid.html (last visited Nov. 20, 2019); *see also* https://www.aetnabetterhealth.com/ (last visited Nov. 20, 2019).

Nurse, (2) Case Manager[3], (3) Care Manager, and/or (4) Utilization.[4] While Aetna refers to these employees collectively as "Clinicians," the term "CMEs" is more appropriate because CMEs perform no clinical work.

As demonstrated in the attached declarations and job descriptions, Aetna used the following labels interchangeably to refer to the positions held by Plaintiff and other CMEs during their employment:

| Ex | ¶ | Interchangeable Labels Used to Refer to CME Declarants |
|---|---|---|
| B | 4 | Care Manager, Clinical Care Manager |
| C | 4 | Field Case Manager, Field Nurse Case Manager, Case Manager RN |
| D | 4 | Case Manager, Field Case Manager |
| E | 3 | UM Regional Nurse Consultant, Utilization Management Nurse Consultant |
| F | 4 | Care Manager, Case Manager, Case Management Coordinator, Care Management Coordinator |
| G | 3 | Case Manager RN, Case Manager Long Term Care, Case Manager LTC, Integrated Long-Term Case Manager, and Medicaid LTC Case Manager |
| H | 4 | RN Case Manager, Nurse Case Manager, Field Case Manager, and Field Nurse Care Manager |
| I | 4 | Care Manager, Case Manager |
| J | 3 | Case Manager, MLTSS Case Manager |
| K | 3 | Case Manager, Quality Nurse |
| L | 4 | RN Case Manager, Case Manager |
| M | 4 | Care Manager, Case Manager, Clinical Case Manager |
| N | 2, 6 | Utilization Review RN, UM Clinical Consultant |

The job titles used by Aetna to refer to CMEs include, without limitation, the following job titles identified in the attached job descriptions and declarations:

Care Manager, Clinical Care Manager, Field Nurse Care Manager, Case Manager, Field Case Manager, Field Nurse Case Manager, Case Manager RN, Case Manager Long Term Care, Case Manager LTC, Integrated Long-Term Case Manager, Medicaid LTC Case Manager, Nurse Case Manager, MLTSS Case Manager, Case Manager RN or LCSW, Care Management Coordinator, Case Management Coordinator, UM Regional Nurse Consultant, Utilization Management Nurse Consultant, Quality Nurse, UM

---

[3] This includes similar job titles, such as "Case Management Coordinator" and "Care Management Coordinator."

[4] This includes job titles that include the abbreviation "UM" (Utilization Management) or "UR" (Utilization Review). It also includes job titles that include terms synonymous with utilization review, such as "concurrent review," "prior authorization," and "precertification review." *See e.g.* Grp. Ex. A, pp. 42, 50, 57.

Clinician – BH, Utilization Management Clinician, UM Nurse Consultant, Utilization Management Clinician – Behavioral Health, UM Clinical Consultant, Prior Authorization Nurse, and Concurrent Review Consultant[5] (collectively, "CME Job Titles").[6]

Importantly, CMEs performed substantially the same job duties regardless of CME Job Title used by Aetna during their employment.[7]

### B.    CMEs' JOB DUTIES.

The case management and utilization review job functions performed by CMEs include collecting information to document insured individuals' medical circumstances; inputting the data into Aetna's computer system; applying established guidelines to maximize plan resources by applying predetermined criteria; coordinating care by performing ministerial acts such as arranging appointments, referrals, and obtaining necessary authorizations; providing insured individuals with additional resources and information about their health plan; and other similar work ("Care Management Work").[8]

### C.    CMEs DID NOT PERFORM TRADITIONAL NURSING WORK.

While some CMEs may be nurses by degree or registration, their job duties did not involve

---

[5] Grp. Ex. A, Job Descriptions, pp. 19-21, 42-45, 49-52, 53-55, 56-59 (variations of the term, "Utilization Review/Management," and terms, such as "prior authorization" and "concurrent review," which are synonymous with utilization review); *see also* table, p. 3, *supra*.

[6] The practice of assigning arbitrary job titles to individuals performing substantially the same work is a pervasive practice in the managed care industry. *See Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 433 (D.N.M. 2018) (conditionally certifying class of managed care workers employed under job titles that included the terms "Care Coordinator" or "Care Manager" and rejecting defendant's argument that certification was inappropriate because defendant employed non-supervisory employees in thirty-six job titles containing the terms "Care Coordinator" or "Care Manager") (emphasis added).

[7] Ex. B, Declaration of Brian Jordan, ¶ 4; Ex. C, Declaration of Cynthia Adams, ¶ 4; Ex. D, Declaration of Sandra Noguera, ¶ 4; Ex. E, Declaration of Katrina Rivers, ¶ 3; Ex. F, Declaration of Bobbie Drew, ¶ 4; Ex. G, Declaration of Cynthia Quisser, ¶ 3; Ex. H, Declaration of Essie Mobley, ¶ 4; Ex. I, Declaration of Susan Slocum, ¶ 4; Ex. J, Declaration of Chiquita Jones, ¶ 3; Ex. K, Declaration of Kim Gathings, ¶ 3; Ex. L, Declaration of Patty Boyer, ¶ 4; Ex. M, Declaration of Clara Wettrich, ¶ 4; Ex. N, Declaration of Mildred Winston, ¶ 6.

[8] Ex. B, ¶ 3; Ex. C, ¶ 3; Ex. D, ¶ 3, Ex. E, ¶ 2; Ex. F, ¶ 3; Ex. G, ¶ 2; Ex. H, ¶ 3; Ex. I, ¶ 3; Ex. J, ¶ 2; Ex. K, ¶ 2; Ex. L, ¶ 3; Ex. M, ¶ 3; Ex. N, ¶ 4.

providing traditional nursing care in a clinical setting, exercising clinical judgment, or providing direct care to treat medical or mental health issues.[9] Rather, CMEs' duties involved applying and communicating Aetna's guidelines, policies, and procedures for the approval and coordination of healthcare benefits on a remote basis or in a call center environment.[10] While Aetna may have preferred CMEs to hold college degrees and clinical certifications, it did not require a degree in any specific field to perform the non-clinical job duties required of CMEs.[11] In fact, some CMEs performed work for Aetna's health plan customers despite holding no clinical license at all.[12] Plaintiff and other CMEs performed the same non-clinical work regardless of whether they held a specific degree or certification as an LPN, RN or any other certification from a state licensing board.[13]

### D.   PLAINTIFF AND OTHER CMEs UTILIZED STANDARDIZED DECISION-MAKING TOOLS TO PERFORM THEIR WORK IN A CONSISTENT MANNER.

Plaintiff and the other CMEs performed their job duties in accordance with Aetna's policies, procedures, guidelines and tools embedded in Aetna's software.[14] Aetna trained CMEs on how to use these decision-making tools to perform their duties in a consistent manner.[15] CMEs could not deviate from these decision-making tools and, with the exception of administrative denials which occurred when a hospital or care provider failed to provide requested medical records, they did not have the authority to deny an insured individual a request for a service or benefit without referring the case to

---

[9] Ex. B, ¶ 5; Ex. C, ¶ 5; Ex. D, ¶ 5; Ex. E, ¶ 4; Ex. F, ¶ 5; Ex. G, ¶ 4; Ex. H, ¶ 5; Ex. I, ¶ 5; Ex. J, ¶ 4; Ex. K, ¶ 4; Ex. L, ¶ 5; Ex. M, ¶ 5; Ex. N, ¶ 5.

[10] Ex. B, ¶¶ 5, 9; Ex. C, ¶¶ 5, 9; Ex. D, ¶¶ 5, 10; Ex. E, ¶¶ 4, 8; Ex. F, ¶¶ 5, 9; Ex. G, ¶¶ 4, 8; Ex. H, ¶¶ 5, 9; Ex. I, ¶¶ 5, 10; Ex. J, ¶¶ 4, 9; Ex. K, ¶¶ 4, 10; Ex. L, ¶¶ 5, 9; Ex. M, ¶ 5; Ex. N, ¶¶ 5, 10.

[11] See Grp. Ex. A, pp.  11, 13, 15, 18, 20, 24, 28, 33, 38, 43, 50, 54, 57.

[12] See e.g. Ex. D, ¶ 6; Ex. I, ¶ 6; Ex. J, ¶ 5; see also Ex. K, ¶¶ 5-6 (licensed LPN in Arizona performing work on health plans in Illinois without licensure in that state).

[13] Ex. D, ¶¶ 3, 5-6; Ex. G, ¶¶ 2-4; Ex. I, ¶¶ 3-6, 10; Ex. J, ¶¶ 2-5; Ex. K, ¶¶ 2-6; Ex. N, ¶¶ 4-6, 13.

[14] Ex. B, ¶¶ 5-7; Ex. C, ¶¶ 5-7; Ex. D, ¶¶ 5, 7-8; Ex. E, ¶¶ 4-6; Ex. F, ¶¶ 5-7; Ex. G, ¶¶ 4-6; Ex. H, ¶¶ 5-7; Ex. I, ¶¶ 5, 7-8; Ex. J, ¶¶ 4, 6-7; Ex. K, ¶¶ 4, 7-8; Ex. L, ¶¶ 5-7; Ex. M, ¶¶ 5, 7-8; Ex. N, ¶¶ 5, 8-9.

[15] Ex. B, ¶ 6; Ex. C, ¶ 6; Ex. D, ¶ 7; Ex. E, ¶ 5; Ex. F, ¶ 6; Ex. G, ¶ 5; Ex. H, ¶ 6; Ex. I, ¶ 7; Ex. J, ¶ 6; Ex. K, ¶ 7; Ex. L, ¶ 6; Ex. M, ¶ 7, Ex. N, ¶ 8.

a medical director physician.[16]

### E. AETNA CLASSIFIED ALL SALARIED CMEs AS EXEMPT AND DENIED THEM OVERTIME PAY.

Plaintiff and Aetna's other salaried CMEs regularly worked over 40 hours per workweek but did not receive one and one-half times their regular rates of pay for the overtime hours they worked.[17] Instead of paying CMEs overtime, Aetna paid them pursuant to its uniform policy and practice that misclassified CMEs as exempt, paid them a salary, and denied them overtime pay for the overtime hours they worked.[18]

## III. REQUEST FOR CONDITIONAL CERTIFICATION

Plaintiff seeks to issue notice of this litigation to the following group:

All CMEs employed by Defendant in the last three years who were paid on a salary basis and classified by Defendant as exempt from overtime compensation ("Collective Action Members").

### A. THE TWO-STEP CERTIFICATION PROCESS.

The Ninth Circuit recognizes that "it is now the near-universal practice to evaluate the propriety of the collective mechanism—in particular, plaintiffs' satisfaction of the 'similarly situated' requirement—by way of a two-step 'certification' process."[19] Once the court determines that potential opt-in plaintiffs may be similarly situated for purposes of Notice, the "action proceeds as a representative action throughout discovery."[20] At step two, after the close of discovery, the defendant may move to decertify the collective. The court then evaluates the evidence to determine whether the

---

[16] Ex. B, ¶ 6; Ex. C, ¶ 6; Ex. D, ¶ 7; Ex. E, ¶ 5; Ex. F, ¶ 6; Ex. G, ¶ 5; Ex. H, ¶ 6; Ex. I, ¶ 7; Ex. J, ¶ 6; Ex. K, ¶ 7; Ex. L, ¶ 6; Ex. M, ¶ 7; Ex. N, ¶ 8 (could only make administrative denials without consulting the medical director physician).
[17] Ex. B, ¶ 10; Ex. C, ¶ 10; Ex. D, ¶ 11, Ex. E, ¶ 9; Ex. F, ¶ 10; Ex. G, ¶ 9; Ex. H, ¶ 10; Ex. I, ¶ 11; Ex. J, ¶ 10; Ex. K, ¶ 11; Ex. L, ¶ 10; Ex. M, ¶ 10; Ex. N, ¶ 12.
[18] *Id.*
[19] *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).
[20] *Russell v. Swick Mining Servs. USA Inc.*, No. CV-16-02887-PHX-JJT, 2017 WL 1365081, at *2 (D. Ariz. Apr. 14, 2017) (citation omitted).

plaintiff and the opt-in plaintiffs share a similar issue of law or fact material to the disposition of their FLSA claims.[21]

Significantly, at step one, the court does "not review the underlying merits of the action, nor should it resolve factual disputes."[22] Similarly, courts recognize that the potential application of an FLSA exemption is a merits issue and is irrelevant at this initial stage.[23] If the existence of possible exemptions could defeat conditional certification, "no FLSA action that is premised upon an alleged misclassification under [an] ... exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit."[24]

**B.** **PLAINTIFF IS ENTITLED TO NOTICE UPON MAKING A MINIMAL SHOWING THAT SHE IS SIMILARLY SITUATED TO OTHER SALARIED CMEs.**

**1.** The Lenient Step-One Standard

Step-One Motions are subject to a "very low" standard of proof.[25] As explained by a court in granting notice to a group of utilization review managers and utilization review specialists:

> The burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification.[26]

Plaintiffs seeking conditional certification must only "make a 'modest factual showing' that they and

---

[21] *Campbell,* 903 F.3d at 1117.

[22] *Cardoso v. Pick A Part LLC,* No. CV-18-04759-PHX-SPL, 2019 WL 3973128, at *2 (D. Ariz. Aug. 22, 2019) (internal citations omitted).

[23] *Barrera v. US Airways Grp.,* No. CV-2012-02278-PHX-BSB, 2013 WL 4654567, at *5 (D. Ariz. Aug. 30, 2013) (declining to consider exemption defense at conditional certification stage) (collecting cases).

[24] *Jackson v. Bloomberg, L.P.,* 298 F.R.D. 152, 161 (S.D.N.Y. 2014) (quoting *Indergit v. Rite Aid Corp.,* No. 08 CIV. 11364 (PGG), 2010 WL 2465488, at *9 (S.D.N.Y. June 16, 2010); *Schroeder v. Humana Inc.,* No. 12-C-0137, 2012 WL 5931886, at *8 (E.D. Wis. Nov. 27, 2012) (granting notice to nationwide group of call center and in-patient nurses employed under at least four different job titles).

[25] *Lee v. Asurion Ins. Servs. Inc.,* No. CV-15-02606-PHX-ROS, 2016 WL 9525665, at *2 (D. Ariz. Dec. 2, 2016).

[26] *Babych v. Psychiatric Sols., Inc.,* No. 09-8000, 2011 WL 5507374, at *3 (N.D. Ill. Nov. 9, 2011).

7

the potential opt-in plaintiffs were victims of a common policy or plan that violated the law."[27] "Because the determination is made prior to the close of the discovery and is based on limited evidence, the court "applies a fairly lenient standard and typically grants conditional class certification."[28]

        2.    <u>Plaintiff Need Only Make Substantial Allegations of a Common Policy or Practice that is Material to Her FLSA Claim</u>

As explained by the Ninth Circuit in *Campbell,* a collective action can be maintained if the plaintiff shows that she and the opt-in plaintiffs share a similar issue of law or fact that is material to the disposition of their FLSA claims.[29] If the plaintiff's and putative opt-in plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.[30] Any variation in the putative class members' job duties is a factor to consider at step two, after the completion of discovery.[31]

In a FLSA exemption case, plaintiff meets her first stage burden by providing evidence that other employees were subject to a uniform compensation plan, had similar jobs with similar functions, and were uniformly treated as exempt from overtime.[32] Moreover,

- Courts routinely grant Notice to groups of misclassified employees with varying job duties when those job duties are substantially similar for purposes of the exemption(s) at issue;[33] and

---

[27] *Collinge v. IntelliQuick Delivery, Inc.,* No. 2:12-CV-00824 JWS, 2015 WL 13764353, at *2 (D. Ariz. Feb. 24, 2015).
[28] *Gonzalez v. Diamond Resorts Int'l Marketing, Inc.,* No. 2:18-cv-00979-APG-CWH, 2019 WL 3430770, at *2 (D. Nev. July 29, 2019) *quoting Misra v. Decision One Mortg. Co., LLC,* 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008).
[29] *Campbell,* 903 F.3d at 1114, 1117 ("the party plaintiffs must be alike with regard to some material aspect of their litigation).
[30] *Smith v. Akal Sec. Inc.,* No. CV-19-01117-PHX-SMB, 2019 WL 1932117, at *2 (D. Ariz. May 1, 2019) *citing Campbell,* 902 F.3d at 1114.
[31] *Scales v. Info. Strategy Design Inc.,* 356 F. Supp. 3d 881, 887 (D. Ariz. Dec. 21, 2018).
[32] *See Fernandez v. Bank of Am., N.A.,* No. CV 17-6104-MWF (JCx), 2019 WL 3059150, at *3 (C.D. Cal. Mar. 8, 2019).
[33] *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.,* MDL No. 2056, 2010 WL 3447783 at *24 (W.D. Penn. Aug. 13, 2010); *Davis v. Social Serv. Coordinators, Inc.,* No. 1:10-cv-02372, 2012 WL 5361746, at *16 (E.D. Cal. Oct. 30, 2012), *report and recommendation adopted as modified,* 2012 WL 5838825 (E.D. Cal. Nov. 15, 2012) (conditionally certifying class of Remote Case Managers, Follow-Up Specialists, Eligibility Counselors I and II, Case Managers and Field Coordinators despite slightly varying job duties where evidence showed all positions exercised little discretion because of defendant's policy requiring them to use call lists, scripts, and checklists for conversations with members/clients, and maintain adherence to production quotas); *Gregory v. Belfor USA Group,* No. 2:12cv11, 2012 WL 3062696, at *3-5 (E.D. Va. July 26,

- Courts consider across-the-board decisions to treat a category of employees as ineligible for overtime sufficient to warrant conditional certification.[34] This principle comports with the Supreme Court's pronouncement that Notice may be authorized under § 216(b) because "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[35]

Here, the First Amended Complaint alleges that Plaintiff and other CMEs (1) primarily performed case management and utilization review functions including Care Management Work, (2) were classified as exempt from overtime; and (3) routinely worked over 40 hours per week without overtime pay.[36] The sworn declarations from Plaintiff and twelve (12) other CMEs substantiate the Complaint's allegations, further demonstrating Plaintiff and the potential opt-in plaintiffs performed similar duties, worked a similar amount of hours, and were subject to Defendant's common policy and practice of misclassifying them as exempt from the overtime provisions of the FLSA.[37] The allegations and sworn statements[38] exceed the "minimal showing" required to authorize notice to the proposed collective of salaried CMEs.

---

2012) (granting conditional certification based on allegations that employees performed strictly administrative tasks, consistently worked more than forty hours per week, and were denied overtime compensation under the administrative exemption to the FLSA);

[34] *Jacob v. Duane Reade, Inc.,* No. 11-cv-0160 (JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) (noting that if defendant's logic were extended, no group of opt-in plaintiffs "would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele." (quoting *Damassia v. Duane Reade, Inc.,* No. 04 CIV. 8819(GEL), 2006 WL 2853971, at *6 (S.D.N.Y. Oct. 5, 2006); *Rossello v. Avon Prod., Inc.,* No. 14-1815 (JAG/BJM), 2015 WL 3890403, at *11 (D.P.R. June 24, 2015) ("Misclassification claims are eminently susceptible to collective proof").

[35] *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

[36] First Am. Complaint, ECF 16, ¶¶ 3, 6-8.

[37] Exhibits B-N.

[38] Indeed, a FLSA collective action may be conditionally certified based on a single plaintiff's affidavit or exclusively on a complaint's "substantial allegations." *See, e.g., Bernal v. Vankar Enter.,* No. SA-07-CA-695, 2008 WL 791963, at *4 (W.D. Tex. March 24, 2008) (noting that "at least one" of the opt-in Plaintiffs submitted an affidavit supporting the allegations); *Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional certification"); *Zhao v. Benihana,* 2001 U.S. Dist. LEXIS 10678 at *12-*13 (S.D.N.Y. 2001) (one affidavit based on plaintiff's "best knowledge"); *Bass v. PJCOMN Acquisition Corp.,* No. 9-cv–1614, 2010 WL 3720217 (D. Colo. Sept. 15, 2010) (two declarations of employees in Colorado sufficient for conditional certification to employees in 82 separate stores located in Colorado and Minnesota).

C.   PLAINTIFF HAS SATISFIED THE MODEST FACTUAL SHOWING REQUIRED TO ISSUE NOTICE TO DEFENDANT'S CMEs.

Plaintiff's First Amended Complaint alleges Aetna violated the FLSA by subjecting salaried CMEs to a common scheme that misclassified them as exempt and failed to pay them overtime pay. Plaintiff corroborates these substantial allegations with Aetna's own job descriptions and the sworn declarations of Plaintiff and twelve (12) other CMEs.[39] The sworn declarations demonstrate that Aetna does not pay salaried CMEs overtime despite regularly suffering and permitting them to work over 40 hours per week.[40] The declarations and job descriptions for the CME positions show that while Aetna preferred specific degrees and certifications, it did not require a bachelor's degree in any specific field or specific licenses/certifications to perform the non-clinical job duties required of CMEs.[41]  In fact, CMEs performed work for health plans and health plan participants despite holding no licenses or certifications at all.[42] Similarly, the sworn statements and job descriptions demonstrate that CMEs could not significantly deviate from Aetna's guidelines.[43]

Plaintiff has thus exceeded her lenient step one burden by demonstrating that she and other CMEs performed the same job duties and were subject to uniform payment provisions that are material to the resolution of her FLSA claim. Rulings in misclassification cases cited with approval by this Court confirm that Plaintiff has presented sufficient evidence to meet her first stage burden.[44]

---

[39] Exhibits A-N.

[40] Ex. B, ¶ 10; Ex. C, ¶ 10; Ex. D, ¶ 11, Ex. E, ¶ 9; Ex. F, ¶ 10; Ex. G, ¶ 9; Ex. H, ¶ 10; Ex. I, ¶ 11; Ex. J, ¶ 10; Ex. K, ¶ 11; Ex. L, ¶ 10; Ex. M, ¶ 10; Ex. N, ¶ 12.

[41] *See* Grp. Ex. A, pp. 11, 13, 15, 18,  33, 50-51, 57; *See also* Ex. D, ¶ 5; Ex. I, ¶ 6; Ex. J, ¶ 5.

[42] *See e.g.* Ex. D, ¶ 6; Ex. I, ¶ 6; Ex. J, ¶ 5, Ex. K, ¶¶ 5-6.

[43] Ex. B, ¶ 6; Ex. C, ¶ 6; Ex. D, ¶ 7; Ex. E, ¶ 5; Ex. F, ¶ 6; Ex. G, ¶ 5; Ex. H, ¶ 6; Ex. I, ¶ 7; Ex. J, ¶ 6; Ex. K, ¶ 7; Ex. L, ¶ 6; Ex. M, ¶ 7; Ex. A, ¶ 8; Grp. Ex. A, pp. 6-7 ("Utilizes case management and quality management processes in compliance with regulatory and accreditation guidelines and company policies and procedures"), 11 (same), 15 (same), 18 (same), 23-24, 32 ("Application and/or interpretation of applicable criteria and clinical guidelines, standardized case management plans, policies, procedures, and regulatory standards"), 57 ("applies the appropriate medical necessity criteria/guideline, policy, procedure").

[44] *Alonzo v. Akal Sec., Inc.,* No. CV-17-00836-PHX-JJT, 2017 WL 5598227, at *3 (D. Ariz. Nov. 21, 2017) ("[T]his Court and other district courts in the Ninth Circuit regularly grant conditional certification upon a more robust evidentiary showing.") (citing *Godbigh v. Savers, LLC,* No. 16-cv-02874-WHO, 2016 WL 7406659, at *2, *5 (N.D. Cal. Dec. 22, 2016) (conditionally certifying nationwide group of assistant managers, including retail sales managers and production managers

Further, courts across the country have nearly unanimously granted step-one notice in FLSA collective actions involving groups of allegedly misclassified managed care workers.[45]  Therefore, the Court should grant Plaintiff's Motion for Conditional Certification.

## IV.   THE COURT SHOULD ADOPT PLAINTIFF'S PROPOSED NOTICE PROGRAM

"Absent reasonable objections by either the defendant or the Court, plaintiffs should be

---

and employees holding comparable positions but different titles, based on six declarations); *Villareal v. Caremark LLC,* 66 F. Supp. 3d 1184, 1192 (D. Ariz. Dec. 17, 2014) (conditionally certifying coding consultants, client benefits analysts, benefit specialists, and employees in similar positions in misclassification case based on five declarations).

[45] *Deakin v. Magellan Health, Inc.,* 328 F.R.D. 427, 436–37 (D.N.M. 2018) (granting nationwide notice to 884 employees in 36 different job titles in "Care Management" job family based on job descriptions and seven declarations establishing that group employees (1) shared similar non-exempt job duties, (2) were subject to the same wage policy that misclassified them as exempt; and (3) paid them on a salary basis); *Lee v. Metrocare Servs.,* 980 F. Supp. 2d 754, 757 (N.D. Tex. 2013) (rejecting defendant's arguments that differences amongst service coordinators should prevent conditional certification and granting notice to nationwide class of Service Coordinators based on five declarations establishing that Service Coordinators "primary duties included meeting and working with consumers and their families to gather information, assessing consumer needs and costs of care, preparing a plan of care for the consumers, and identifying and implementing services to meet the consumer's needs."); *Slaughter v. Caidan Mgmt. Co., LLC,* 317 F. Supp. 3d 981, 989 (N.D. Ill. 2018) (granting notice to companywide group of misclassified workers employed under seven different job titles in employer's "care coordination" department based on allegations corroborated by declarations showing employees had same primary duties (data collection, data entry, care utilization, plan education and care coordination) that "did not involve the exercise of clinical judgment, providing traditional nursing care in a clinical setting, or providing direct medical care to members."); *Clark v. Centene Corp.,* No. A-12-CA-174-SS, 2013 WL 12108138, at *4 (W.D. Tex. May 8, 2013) (granting notice to "Case Manager/Pre Certification," "Case Manager/Prior Authorization," and "nurses working in 'utilization management'" who were classified as exempt and denied overtime and whose job duties included "applying pre-determined criteria and guidelines to a patient's medical data in response to requests by medical providers for the authorization of services."); *Ruggles v. WellPoint, Inc.,* 591 F. Supp. 2d 150, 163 (N.D.N.Y. 2008) (granting conditional certification of a nationwide group of approximately 400 utilization review nurses, medical management nurses, and case management nurses based on allegations and ten affidavits uniformly stating that they shared the same primary duty, did not work in a clinical setting, were classified as exempt and were not paid overtime.); *Schroeder v. Humana Inc.,* No. 12-C-0137, 2012 WL 5931886, at *7 (E.D. Wis. Nov. 27, 2012) (granting conditional certification to nationwide group of prospective and retrospective review nurses, acute case managers, and concurrent review nurses based on five declarations that raised an inference that the positions were substantially similar by providing that the positions (1) performed the "basic job function of comparing medical information to guidelines in order to make approval determinations" regarding benefit requests; (2) did "not treat patients and ha[d] little interaction with or involvement in patient care beyond making insurance coverage decisions"; and (3) "performed [work] using standardized guidelines that determine the outcome of the nurse's authorization decisions."); *Jackson v. Superior Healthplan, Inc.,* No. 3:15-CV-3125-L, 2016 WL 7971332, at *7 (N.D. Tex. Nov. 7, 2016) (holding plaintiff had met her burden to send notice to companywide group of Level 2 Field Service Coordinators based on allegations in complaint corroborated by declarations showing that defendant designated position as a "Clinical and Nursing", uniformly classified the position as exempt "regardless of the actual job responsibilities," required employees to perform primarily non-exempt work, and failed to pay them overtime); *Randolph v. Centene Mgmt. Co.,* No. C14-5730 AETNAS, 2015 WL 2062609, at *3-4 (W.D. Wash. May 4, 2015) (granting notice to nationwide group of case managers based on (1) allegations that employer "had common policy of classifying case managers as exempt employees and denying them overtime compensation in violation of FLSA"; and (2) ten declarations corroborating that employer classified case managers who "performed utilization review work as exempt from the FLSA").

allowed to use the language of their choice in drafting the notice."[46] "The only thing that matters to the Court is that the notice of lawsuit and consent form convey accurately and fairly all the necessary information at this stage."[47] Plaintiff's proposed Notice and Consent Form (attached hereto as Exhibit O) is accurate, comprehensible, and conveys all information necessary at this stage.[48]

Plaintiff seeks a sixty-three day opt-in period from the date Notice is mailed and an Order (1) requiring Aetna to disclose the names, job titles, start and end dates, last known mailing addresses, last known email addresses, mobile telephone numbers, and work locations of the Collective Action Members (in useable electronic form to reduce delay in sending notice) within seven days from the entry of an Order; and (2) authorizing Plaintiff to send the Notice and Consent Forms by mail, email and text message to the Collective Action Members; (3) permitting Plaintiff's Counsel to send a reminder Notice via U.S. mail, email, and text message thirty (30) days after the initial notice is issued.[49]

Plaintiff's proposed Notice program will allow the FLSA's collective action mechanism to serve its "important remedial purpose"[50] of allowing workers to "lower individuals costs…by the pooling of resources."[51] Further, "[t]he judicial system benefits by efficient resolution … of common issues of law and fact" in one proceeding.[52] While the Court enjoys wide discretion in implementing notice, it should use this discretion to further the intended purpose of the notice provisions of the FLSA: "to inform as many potential plaintiffs as possible of the collective action and the right to opt-in."[53] This is because in "order for the FLSA to serve its remedial function, putative class members

---

[46] *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *6 (N.D. Ill. Sept. 30, 2013) (internal citations omitted).
[47] *Id.*
[48] *See* Exhibit O.
[49] Plaintiff has submitted a separate Proposed Order consistent with Local Rule 7.1.
[50] *Gunn v. NPC Int'l, Inc.*, 625 Fed. Appx. 261, 263 (6th Cir. 2015) (internal citation omitted).
[51] *Bayles v. Am. Med. Response of Colorado, Inc.*, 950 F. Supp. 1053, 1067  (D. Colo. 1996) (cites and quotes omitted).
[52] *Id.*
[53] *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8545, 2013 WL 5308004, at *16 (S.D.N.Y.  Sept. 20, 2013).

**must actually become aware** of their right to opt in."[54]

According to a recent Pew Research Institute report, approximately 36 million Americans move each year and often take their cell phone numbers with them: 10% of U.S. adults have cell phone numbers that don't match the state they live in; and 40% of urban dwellers have a number that doesn't match the city where they live.[55] This phenomenon has led courts to conclude that email addresses and cell phone numbers are "the most consistent and reliable method of communication" because "traditional methods of communication via regular mail and land line telephone numbers [have] quickly become obsolete."[56]  The Court should adopt this pragmatic approach:

> Further discussion regarding whether notice by email and text should be allowed
> would also be pointless because the law is on Plaintiff's side. Courts have recognized
> that notice by email and text is reasonable in today's mobile society and that these
> methods of communication may offer a more reliable means of reaching an individual
> even if that individual is away from home or has moved.[57]

Plaintiff accordingly requests that the Court grant Notice by U.S. mail, email and text message to comport "with what has been approved in other FLSA collective actions,"[58] and because doing so is the most "viable and efficient means of notifying many prospective members of this collective action."[59] Plaintiff also seeks leave to issue a reminder Notice thirty (30) days into the notice period to reduce the likelihood that that interested Collective Action Members will overlook the Notice.[60] Such a decision accords with the FLSA's remedial purposes and recent orders granting the proposed

---

[54] *Kidd v. Mathis Tire and Auto Serv., Inc.,* No. 2:14–cv–02298, 2014 WL 4923004, at *3 (W.D. Tenn. Sept. 18, 2014) (emphasis added).
[55] https://pewrsr.ch/2Ua8kht (last visited Nov. 20, 2019).
[56] *Irvine v. Destination Wild Dunes Mgmt., Inc.,* 132 F.Supp.3d 707, 711 (D.S.C. 2015).
[57] *Calvillo v. Bull Rogers, Inc.,* 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (citing *Landry v. Swire Oilfield Serv., LLC,* 252 F.Supp.3d 1079, 1128–31, 2017 WL 1709695, *39-40 (D.N.M., May 2, 2017)).
[58] *Eley v. Stadium Grp., LLC,* No. 14–cv–1594 (KBJ), 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015).
[59] *Landry,* 252 F. Supp. 3d 1079, 1129–30 (D.N.M. 2017) (citation omitted).
[60] *See O'Neal v. Am.'s Best Tire LLC,* No. CV-16-00056-PHX-DGC, 2016 WL 3087296, at *7 (D. Ariz. June 2, 2016) (granting a reminder notice 30 days after original notice was sent); *Hart v. U.S. Bank NA.,* No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *6 (D. Ariz. Nov. 8, 2013) (rejecting defendant's argument that a reminder notice would be harassing).

method of Notice by courts across the country. [61]

**V.     NOTICE SHOULD ISSUE TO ALL COLLECTIVE ACTION MEMBERS, INCLUDING THOSE WHO MAY HAVE SIGNED AN ARBITRATION AGREEMENT**

Plaintiff anticipates Aetna will argue that notice of the litigation should not be sent to CMEs who have may have signed an arbitration agreement with Defendant. Defendant is wrong. This argument improperly presupposes that any applicable arbitration agreement is enforceable and, as explained by the District of Nevada, is strictly at odds with the overwhelming weight of authority in the Ninth Circuit:

> [A]s courts in this circuit have consistently recognized, "[n]o district court in our circuit has denied conditional certification on the basis that some members of the proposed collective may be subject to valid and enforceable arbitration clauses. The decisions that have addressed that issue have all found that the issue of the enforceability of arbitration clauses related to the merits of the case and therefore should be dealt with in phase two." *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 424 (N.D. Cal. 2015); *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015) ("The initial 'notice stage' is not the appropriate time for a court to evaluate the merits of plaintiffs' FLSA claims."). Moreover, "[t]he fact that there is an arbitration agreement goes to [a defendant's] defenses, not the common policy. Thus, the enforceability of the arbitration agreements is better reserved for the step two determination, not step

---

[61] *Greene v. Omni Limousine, Inc.*, No. 2:18-cv-01760-GMN-VCF, 2019 WL 2503950, at *6-7 (D. Nev. June 15, 2019) (granting conditional certification, authorizing notice via mail, email, and text message, and permitting reminder notice via email); *MacDonald v. Covenant Testing Techs., LLC*, No. 18-CV-02290-NRN, 2019 WL 1755282, at *7 (D. Colo. Apr. 18, 2019) (granting notice by U.S. Mail, email, and text message because doing so would "likely to 'increase the probability of apprising collective action members of their rights.'") (quoting *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018)); *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRx), 2018 WL 6431869, at *5 (C.D. Cal. Sept. 28, 2018) (granting notice via mail, email, and text message and a 30-day reminder notice); *Zigler v. Express Messenger Sys. Inc.*, No. CV-16-02726-PHX-SRB, 2017 WL, 6539020, at *6 (D. Ariz. Aug. 31, 2017) (granting notice via mail, email, and text message), *vacated on other grounds by Ziglar v. Express Messenger Sys. Inc.*, 739 Fed. Appx. 444 (9th Cir. 2018); *Camp v. Bimbo Bakeries USA, Inc.*, No. 18-CV-378-SM, 2019 WL 440567, at *5 (D.N.H. Feb. 4, 2019) (authorizing notice by mail, email and text message and reminder notice via mail, email and text message to non-responsive class members 45-days later); *Moody v. Associated Wholesale Grocers Inc.*, No. CV 17-10290, 2019 WL 175305, at *3 (E.D. La. Jan. 11, 2019) (granting notice via mail, email, and text message); *Douglas v. Anthem Prods., LLC*, No. 18-CV-5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (same); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17CV04661 (PGG) (DF), 2019 WL 3759126, at *13 (S.D.N.Y. July 25, 2019) ("Once this Court approves the modified notice, Plaintiffs' counsel may arrange to have it disseminated, in any relevant language, via mail, email, text message, and/or social media chat, to all potential members of the collective."); *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17CV7066 (DF), 2019 WL 699179, at *15 (S.D.N.Y. Feb. 5, 2019) (same); *Portilla v. Bridgehampton Stone, Inc.*, No. CV172549JMAAYS, 2019 WL 1128364, at *10 (E.D.N.Y. Mar. 12, 2019) (noting that practical requests, such as dissemination via email and text messages, further the purpose of notice of a collective action under the FLSA) (citations omitted).

one." *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017).[62]

A district court may not presumptively limit the scope of a collective because of an arbitration agreement.[63] "*Campbell* makes clear that even [if] the vast majority of this action's putative plaintiffs appear to be subject to an enforceable arbitration agreement, this court may not presumptively deny FLSA certification or narrow the scope of the proposed collective."[64] The existence of an arbitration program has "little to no bearing at this point in the litigation because [it] relate[s] to whether 'disparate factual and employment settings' exist with respect to the putative class members and to 'the various defenses available to the defendant with respect to each plaintiff.' These inquiries are reserved for the second stage of the certification process."[65] This is particularly true when the defendant has not moved to enforce an arbitration agreement and the court has not yet ruled on an arbitration agreement's enforceability.[66] Here, Plaintiff did not sign Aetna's arbitration agreement and Defendant cannot seek to compel arbitration against her or seek a determination on the validity of the arbitration program before notice is issued to the collective.[67] Therefore, the Court should grant Plaintiff's motion for conditional certification and permit notice to the Collective Action Members regardless of whether

---

[62] *Greene,* 2019 WL 2503950, at *4; *see also Conde v. Open Door Marketing, LLC,* 223 F. Supp. 3d 949, 969 (N.D. Cal. Apr. 27, 2017) (court declines to assume, prior to issuing notice to the collective, that arbitration agreement is enforceable); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.,* No. 15-cv-04456-PJH, 2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018); *Monplaisir v. Integrated Tech Group, LLC,* No. C 19-01484 WHA, 2019 WL 3577162, at *3 (N.D. Cal. Aug. 6, 2019) ("District judges within our circuit that have addressed the issue have all found that the issue of the enforceability of arbitration clauses relates to the merits of the case and therefore should be dealt with in phase two.") (internal citations omitted).

[63] *Conde,* 223 F. Supp. 3d at 969 (court declines to assume, prior to issuing notice to the collective, that arbitration agreement is enforceable); *Campanelli,* 2018 WL 6727825, at *9; *Monplaisir,* 2019 WL 3577162, at *3 ("District judges within our circuit that have addressed the issue have all found that the issue of the enforceability of arbitration clauses relates to the merits of the case and therefore should be dealt with in phase two.") (internal citations omitted).

[64] *Campanelli,* 2018 WL 6727825, at *9 (this sequencing "is what *Campbell* demands.")

[65] *Conde,* 223 F.Supp.3d at 968 (internal citations omitted) citing *Deatrick v. Securitas Security Servs. USA, Inc.,* No. 13-cv-5016-JST, 2014 WL 5358723, at *3 (N.D. Cal. Oct 20, 2014). *See also, Varghese v. JP Morgan Chase & Co.,* No. 14 Civ 1718 (PGG), 15 Civ. 3023 (PGG), 2016 WL 4718412, at *9 (S.D.N.Y. Sept. 9, 2016) ("Courts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination'") (internal citations omitted).

[66] *See, e.g. Longnecker v. Am. Exp. Co.,* No. 2:14-cv-0069-HRH, 2014 WL 4071662, at *7 (D. Ariz. Aug. 18, 2014).

[67] *See, e.g. Ortega v. Spearmint Rhino Cos. Worldwide, Inc.,* No. EDCV 17-206, JGB (KKx), 2019 WL 2871156, at *6 (C.D. Cal. May 15, 2019) (granting conditional certification, issuing notice to all potential opt-in plaintiffs, and deferring consideration of an arbitration agreement to step two when the defendants had not moved to compel arbitration against all of the current opt-in plaintiffs).

they signed an arbitration agreement.

## VI.   CONCLUSION

Because Plaintiff has satisfied her modest factual burden, this Court should grant her Motion

for Step-One Notice Pursuant to the FLSA.

Dated this 22nd Day of November, 2019.

RESPECTFULLY SUBMITTED,

/S/ SARAH J. ARENDT

DOUGLAS M. WERMAN
dwerman@flsalaw.com
MAUREEN A. SALAS
msalas@flsalaw.com
SARAH J. ARENDT
sarendt@flsalaw.com
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

JACK SIEGEL
jack@siegellawgroup.biz
SIEGEL LAW GROUP, PLLC
4925 Greenville, Suite 600
Dallas, Texas 75206
P: 214.790.4454

TRAVIS M. HEDGPETH
travis@hedgpethlaw.com
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Telephone: (281) 572-0727
Facsimile: (281) 572-0728

CLIFFORD P. BENDAU, II
cliffordbendau@bendaulaw.com
Bendau & Bendau PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Facsimile: (602) 956-1409

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of November, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties and counsel of record by operation of the Court's electronic filing system. The Parties may access this filing through the Court system.

/s/ Sarah J. Arendt
Sarah J. Arendt